UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA LITVINOVA,<br><br>    Plaintiff,<br><br>    v.<br><br>KAISER FOUNDATION HOSPITALS, *et al.*,<br><br>    Defendants. | Case No. 25-cv-06253-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 8 |

Before the Court is defendant Kaiser Foundation Hospitals' motion to dismiss plaintiff Tatyana Litvinova's complaint. Pursuant to Civil Local Rule 7-1(b), the Court determined that this matter is suitable for resolution without oral argument and VACATED the hearing. For the reasons set forth below, the Court GRANTS Kaiser's motion and GRANTS plaintiff leave to amend. Any amended complaint must be filed no later than **November 7, 2025.**

**BACKGROUND[1]**

Plaintiff Tatyana Litvinova is a nurse employed by defendant Kaiser Foundation Hospitals ("Kaiser"). Dkt. No. 1-1 Ex. A ("Compl.") ¶ 1. She "acted as a union representative and consistently advocated for the safety of patients and staff." *Id.* ¶ 9. Litvinova alleges that after she raised concerns regarding "unsafe patient care conditions, severe staffing shortages, [and] violent and threatening behavior by a colleague," defendants retaliated against and harassed her. *Id.* ¶ 8. The retaliatory and harassing conduct included "denial of income generating shifts, exclusion from training and advancement opportunities, removal from union-related activities, public

---

[1] The factual allegations in the complaint are sparse and span approximately 1 page.

1  disparagement, and professional isolation." *Id.* Litvinova alleges that "no adequate internal
2  investigation was conducted." *Id.* ¶ 12.

3   At all relevant times, a collective bargaining agreement ("CBA") governed the terms and
4  conditions of Litvinova's employment. *Id.* ¶ 13. The CBA contains provisions regarding shift
5  assignments, wages, holiday and overtime, training and advancement opportunities, and grievance
6  procedures. Dkt. No. 1-2 ("CBA"). Litvinova alleges that "Kaiser's conduct violated not only
7  statutory obligations but also terms of the applicable Collective Bargaining Agreement (CBA)
8  which protects against retaliation and requires fair assignment of work and shift opportunities."
9  Compl. ¶ 13.

10   On June 20, 2025, Litvinova sued Kaiser, Kaiser Permanente, and five individuals in San
11 Francisco Superior Court, alleging eight causes of action: (1) Retaliation in Violation of Cal. Labor
12 Code § 1102.5; (2) Harassment and Hostile Work Environment in Violation of the Fair Employment
13 and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (3) Failure to Investigate and Prevent
14 Harassment under FEHA, Cal. Gov't Code § 12940(j), Cal. Code Regs. tit. 2, § 11023; (4) Violation
15 of Whistleblower Protections; (5) Breach of Contract; (6) Failure to Provide a Safe Working
16 Environment; (7) Intentional Infliction of Emotional Distress; and (8) Negligent Supervision and
17 Retention. Kaiser removed the case to this Court asserting federal question jurisdiction based on
18 preemption under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.
19 § 185(a). Kaiser has moved to dismiss the complaint, arguing that the state law claims are
20 preempted, that Litvinova is precluded from bringing any claims under the LMRA, and that any
21 non-preempted claims fail to state a claim.

22

23                          **LEGAL STANDARDS**
24 **I.   Rule 12(b)(6)**

25   A complaint must contain "a short and plain statement of the claim showing that the pleader
26 is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to
27 dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, Litvinova must
28 allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

2

550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, courts may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Lost Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**II.     Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual."). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed

in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted).

**DISCUSSION**

**I.     LMRA Preemption**

Kaiser contends that the first through fifth causes of action are preempted by Section 301 of the LMRA, 29 U.S.C. § 185.[2] Kaiser has the burden to demonstrate preemption. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995). Section 301 "authorized the federal courts to develop a federal common law of CBA interpretation" and "this federal common law preempts the use of state contract law in CBA interpretation and enforcement." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc). "Preemption under § 301 is not limited to 'cases specifically alleging contract violation,' but also applies 'when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132 (9th Cir. 2016) (quoting *Cramer*, 255 F.3d at 689, and *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

The Ninth Circuit has articulated a two-part test to determine whether claims brought under

---

[2] Section 301 provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

4

state law are preempted by Section 301. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007). First, does the cause of action "involve[] a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* Second, if the right does exist independently, then the court must consider whether it is "substantially dependent on analysis" of the CBA. *Id.* However, the "mere need to consult the terms of the CBA in the course of resolving a state law claim does not necessarily result in preemption." *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "At this second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms[,] [and] a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019) (internal quotation marks and citations omitted).

State law claims preempted by the LMRA may be brought under Section 301, but they are subject to Section 301's six-month statute of limitations under Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). *See Del Costello v. Teamsters*, 462 U.S. 151, 155 (1983) (holding that the proper statute of limitations for an employer's breach of a CBA is the six-month limitations period in § 10(b)). In addition, a plaintiff can only pursue a Section 301 claim if grievance procedures set forth in the CBA have been exhausted. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 989 (9th Cir. 2007) (granting summary judgment on plaintiff's Section 301 claim for failure to exhaust grievance procedures).

### A.    Breach of the Collective Bargaining Agreement (Fifth Cause of Action)

The fifth cause of action alleges that Kaiser "breached the terms" of the CBA. Compl. ¶¶ 13, 22. Kaiser moves to dismiss this claim as preempted under Section 301. Litvinova's opposition does not address this cause of action.

"A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). If Litvinova wishes to pursue a claim for breach of the CBA, she may do so only under Section 301.

*Id.* Accordingly, the Court DISMISSES the fifth cause of action and GRANTS Litvinova leave to amend to assert a claim under section 301. If Litvinova asserts a claim under section 301 for breach of the CBA, the amended complaint shall address whether Litvinova exhausted the grievance and arbitration procedures under the CBA, as well as the dates when events described in the complaint occurred.

### B. Retaliation and Violation of Whistleblower Protections (First and Fourth Causes of Action)

Litvinova's first cause of action alleges that defendants retaliated against her in violation of California Labor Code § 1102.5. Under § 1102.5(b), an employer may not retaliate against an employee for disclosing a violation of a state or federal statute, regulation, or rule. *See* Cal. Lab. Code § 1102.5. Litvinova alleges that she raised concerns regarding unsafe patient care conditions, staffing shortages, and violent behavior from a colleague, and that in response, defendants denied her income-generating shifts, excluded her from training and advancement opportunities, removed her from union-related activities, and subjected her to public disparagement and professional isolation. Compl. ¶¶ 7-8. The fourth cause of action alleging that Kaiser violated whistleblower protections is based on the same facts of retaliation. *Id.* ¶ 21.

Kaiser moves to dismiss these claims on the ground that they are preempted by Section 301 because "Plaintiff asserts action by KFH that is described in and governed by the CBA." Motion at 6. *Id.* at 8. Litvinova contends that her claims are "independent of any collective bargaining agreement" and "do not require interpretation of it." Dkt. No. 17 ("Opposition") at 2, 5.

The right to be free from retaliation under California Labor Code § 1102.5 exists independent of the CBA. *See Quigley v. United Airlines, Inc.*, No. 3:21-CV-00538-WHO, 2021 WL 1176687, at *11 (N.D. Cal. Mar. 29, 2021). Thus, Litvinova's retaliation claims are not preempted under the first step of the *Burnside* test.

Next, the Court considers whether the retaliation claims are "substantially dependent on analysis" of the CBA. *See Burnside,* 491 F.3d at 1059. Kaiser argues that the retaliation claims depend on the CBA's criteria governing advancement opportunities, assignment to income

6

1    generating shifts, and participation in union-related activities.  *See* CBA Article 7 Section C
2    (Overtime); Article 23 Section A (Wages, Advancement Criteria, Promotions); Article 23, Section
3    E (Standby Shifts); Article 27 Section B-D (Holiday Pay Practices); Appendix M on Regional
4    Scheduling Guidelines.  CBA at 18-20, 27, 75-77, 81-82, 90-92, 179.

5          The meager factual allegations of the complaint and the brevity of plaintiff's arguments in
6    the opposition brief make it difficult for the Court to determine whether Litvinova's retaliation
7    claims are preempted under the second step of the *Burnside* test.  If, for example, Litvinova claims
8    that Kaiser retaliated against her by violating the CBA or misinterpreting the CBA's provisions on
9    seniority and shift assignments, those claims are preempted because the Court would have to decide
10   whether the CBA was violated and/or whose interpretation was correct.  *See Audette v. Int'l*
11   *Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1112-13 (9th Cir. 1999) (holding state
12   law retaliation/discrimination claim was preempted where female employees claimed employer
13   "used a change in the Voluntary Travel provision of the CBA as a 'ruse' to oppose registration" of
14   employees for certain positions because resolving claim would require interpreting CBA and did
15   "not involve a free-standing claim of discrimination").  However, if Litvinova's retaliation claims
16   do not "raise questions about the scope, meaning, or application of the CBA," they are not
17   preempted.  *Curtis*, 913 F.3d at 1153; *see Quigley*, 2021 WL 1176687, at *11 (denying motion to
18   dismiss § 1102.5 retaliation claim on preemption grounds because the defendant's "vague references
19   to CBA provisions are unavailing" and "fail[] to show that any of them actually will require
20   *interpretation*.") (emphasis in original).

21         Litvinova also claims Kaiser retaliated against her through "public disparagement and
22   professional isolation" and that "[i]n response to her protected activities, Kaiser and its agents
23   escalated their retaliation, with supervisors including Lionel Hoyte and Laura Jefferson engaging in
24   or condoning harassment and retaliatory behavior."  Compl. ¶¶ 8, 11.  The complaint does not
25   provide any additional facts regarding how Litvinova was subject to public disparagement or
26   professional isolation or harassment, and thus the Court is unable to determine whether these claims
27   are preempted.  *See Hayden v. Reickerd*, 957 F.2d 1506, 1507 (9th Cir. 1991) (reversing dismissal
28   based on preemption where "the parties have failed to provide us with sufficient factual information

about the conduct involved in the alleged retaliation and about the collective bargaining agreement for us to finally determine whether federal labor law preempts all of Hayden's retaliation claims").

The Court GRANTS Litvinova leave to amend to amplify the retaliation allegations in an effort to show how the retaliation claims are not preempted under the LMRA.[3]

### C. Harassment and Hostile Work Environment in Violation of FEHA and Failure to Investigate and Prevent Harassment (Second and Third Causes of Action)

Litvinova's second and third causes of action allege that defendants harassed her "based on her advocacy and union involvement, creating a hostile work environment" and that defendants "failed to take reasonable steps to prevent and investigate harassment and retaliation." Compl. ¶¶ 19-20. The complaint does not contain any additional facts about the nature of the harassment and hostile work environment, or Kaiser's failure to investigate. Kaiser moves to dismiss this claim on the grounds that the allegedly harassing conduct is governed by the CBA and preempted by the LMRA. Motion at 7-8. Litvinova's opposition did not specifically respond to these contentions and simply asserts that the preemption "argument is meritless."

The FEHA makes it unlawful for any employer or person to harass an employee because of, *inter alia*, sex, age, race, or disability. Cal. Gov't Code § 12940(j)(1). FEHA's anti-harassment provision protects employees from "situations in which the social environment of the workplace becomes intolerable because the harassment . . . communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009) (emphasis removed). "To establish a claim for harassment, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citation omitted). An employer is strictly liable for harassment by a supervisor, and liable for harassment by coworkers if it is negligent in allowing the harassment to continue. *State Dep't of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1049 (2003);

---

[3] As discussed *infra*, the Court concludes that the retaliation and harassment claims are likely preempted under the doctrine known as *Garmon* preemption, and thus if Litvinova wishes to pursue these claims she needs to demonstrate how these claims survive both types of preemption.

8

Cal. Gov't Code § 12940(j)(1).

In *Matson v. United Parcel Service, Inc.*, the Ninth Circuit found that a hostile work environment inquiry focused on the "*actual workplace treatment* of the plaintiff and the actual practice of management in responding." 840 F.3d 1126, 1134 (9th Cir. 2016) (emphasis in original). This "multi-factor, fact-based inquiry" can resolve the plaintiff's hostile environment claim "without interpreting any provision of the CBA." *Id.* Just as failure to assign the plaintiff work in *Matson* was evidence of her employer's hostility, here, for example, any claim that shift assignments were not based on seniority could be evidence of the Kaiser's hostility towards Litvinova. *See id.*

As with the retaliation claims, the Court cannot determine whether the FEHA harassment and failure to investigate harassment claims are preempted because of the sparse and conclusory nature of the allegations. Further, Litvinova has failed to allege that Kaiser subjected her to harassment because of a protected status. "Membership in a protected class, and harassment based on the protected characteristic, are prerequisites to a FEHA harassment claim." *McCree v. State of California Dep't of Conservation*, No. 12-CV-04127-JST, 2014 WL 1936504, at *5 (N.D. Cal. May 14, 2014) (citing *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989)).

The Court GRANTS leave to amend these claims to allow Litvinova the opportunity to show that the claims are not preempted and that she was harassed on the basis of a protected characteristic.

### D. Unsafe Workplace Conditions (Sixth Cause of Action)

The sixth cause of action alleges that Kaiser "failed to maintain a workplace free from violence, threats, and harassment, violating California Labor Code and OSHA standards." Compl. ¶ 23. Kaiser first contends that California state and federal OSHA claims are not actionable because state claims must be filed in the administrative system and federal claims involve no private right of action. Motion at 13; *see Est. of Macis v. Waste Mgmt. of Alameda Cnty., Inc.*, No. 13-cv-04648, 2014 WL 334206 (N.D. Cal. Jan. 29, 2014) ("federal [OSHA] law does not provide a private right of action"). Separately, Kaiser also moves to dismiss this claim as preempted by the LMRA if the claim is brought under California Labor Code § 6400. Motion at 14. Litvinova did not specify the specific statutory basis of her claim and did not respond to Kaiser's arguments in her opposition.

9

Kaiser is correct that OSHA violations "do not themselves constitute a private cause of action." *Crane v. Conoco*, 41 F. 3d 547, 553 (9th Cir. 1994); 29 U.S.C. § 653(b)(4) ("[n]othing in this chapter shall be construed to . . . enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees"); *Doutherd v. Montesdeoca*, 2020 WL 6043952, at *22 (E.D. Cal. Oct. 13, 2020) ("Plaintiff's purported private claim for OSHA violations is barred as a matter of law."). In addition, this Court (in another case) and other district courts have held that there is no private right of action under California Labor Code Section 6400. *See Turner-Gray v. AMN Healthcare Inc.,* No. 23-CV-05507-SI, 2025 WL 50419, at *3 (N.D. Cal. Jan. 7, 2025) (discussing cases); *Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 950-51 (C.D. Cal. 2021) ("Wicker alleges violations of the California's Labor Code §§ 6400…These statutes, however, do not provide for any private right of action").

Accordingly, the Court DISMISSES the sixth cause of action without leave to amend.

## II. *Garmon* Preemption

In addition to preemption under the LMRA, Kaiser contends that Litvinova's first through fifth,[4] and seventh and eighth causes of action should be dismissed because they are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq*. "The NLRA does not contain express preemption provisions, but the Supreme Court held that two categories of state action are implicitly preempted: (1) laws that regulate conduct that is either protected or prohibited by the NLRA (*Garmon* preemption), and (2) laws that regulate in an area Congress intended to leave unregulated or controlled by the free play of economic forces (*Machinists* preemption)." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir. 2022) (internal quotation marks and citation omitted). Here, Kaiser relies on *Garmon* preemption. *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959).

"*Garmon* pre-emption 'is intended to preclude state interference with the National Labor

---

[4] Because the Court concludes that the fifth cause of action for breach of the CBA is preempted by the LMRA, the Court does not address whether *Garmon* preemption applies to that claim.

10

1    Relations Board's interpretation and active enforcement of the integrated scheme of regulation

2    established by the NLRA.'" *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (quoting

3    *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613 (1986)) (some internal

4    quotation marks omitted). *Garmon* preemption forbids States from "regulat[ing] activity that the

5    NLRA protects, prohibits, or arguably protects or prohibits.'" *Brown*, 554 U.S. at 65 (citation

6    omitted).

> Sections 7 and 8 of the NLRA provide a private cause of action for claims "based on the conduct of labor organizations or their agents that constitute unfair labor practices." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 950 (9th Cir. 2014). Specifically, NLRA Section 7 protects the right of employees "to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 bars unfair labor practices by employers and labor organizations and also makes it illegal "for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of the NLRA]." *Id.* at § 158(a)-(b).

*Moreno*, 29 F.4th at 573-74.

There are two limits to the scope of NLRA preemption. *Garmon*, 359 U.S. at 244. First, States still have the power to regulate activity that is a "merely peripheral concern" to the LMRA. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 952 (9th Cir. 2014) (quoting *Garmon*, 359 U.S. at 244). Second, States also retain the power to act on regulated conduct that "touche[s] interests so deeply rooted in local feeling and responsibility." *Id.* Kaiser bears the burden of showing that *Garmon* preemption applies. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 395 (1986).

### A.     Retaliation and Harassment Claims (First-Fourth Causes of Action)

Litvinova alleges that throughout her employment she raised concerns about unsafe patient care conditions, severe staffing shortages, and violent and threatening behavior by a colleague; that these "concerns and complaints were not isolated" and that "[s]he acted as a union representative and consistently advocated for the safety of patients and staff," and that in response to her complaints, Kaiser subjected to her to retaliatory and harassing conduct, including the "[r]emoval from union-related activities." Compl. ¶¶ 7-9, 11, 19.

The Court concludes that these allegations implicate Section 7 of the NLRA because actions taken as a union representative are "concerted activities . . . for the purpose of collective bargaining or other mutual aid or protection," and Section 8 makes it illegal to for employers to "interfere with, restrain, or coerce employees" for exercising their Section 7 rights. 29 U.S.C. §§ 157-58; *see also Mayes v. Kaiser Found. Hosp.*, 917 F. Supp. 2d 1074, 1082-86 (E.D. Cal. 2013) (discussing numerous cases and holding nurse's state law claims for retaliatory discharge were preempted by *Garmon* where nurse alleged he raised safety concerns about staffing ratios in his capacity as a union representative and Kaiser retaliated by terminating him). Here, although the complaint is light on details, Litvinova alleges that she raised complaints about safety issues in her capacity as a union representative, and that Kaiser retaliated against and harassed her as a result of her protected conduct. Thus, on the face of these bare allegations, the retaliation and harassment claims would appear to be preempted under *Garmon*. *See id*.

If plaintiff chooses to pursue the first through fourth causes of action, the amended complaint must allege facts showing why the claims are not preempted under *Garmon*.

### B.     Intentional Infliction of Emotional Distress (Seventh Cause of Action)

Litvinova alleges that defendants' actions "were extreme and outrageous and intentionally caused Plaintiff emotional distress." Compl. ¶ 24. The complaint does not specify which actions were extreme, and instead simply incorporates all previous factual allegations, and thus it appears that the allegedly extreme and outrageous actions are defendants' retaliatory and harassing conduct.

To prevail on an intentional infliction of emotional distress ("IIED") claim, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (applying California law). Kaiser contends that this claim is preempted by *Garmon* and that it fails to meet the pleading standards of *Twombly*. Motion at 11, 14. In response, Litvinova merely restates the elements of an IIED claim and states that Kaiser's *Garmon* argument fails, without any

explanation as to why.

Because the IIED claim appears to be based on the same facts giving rise to the retaliation and harassment claims, the Court finds that it may be preempted for the reasons stated above. *See Kroeger v. L3 Techs., Inc.*, Case No. 2:17-cv-08489-JFW-AGR, 2018 WL 1357363, at *3-4 (C.D. Cal. Mar. 15, 2018) (dismissing as preempted the plaintiff's IIED claim based on retaliatory threats for engaging in NLRA-protected activities such as filing grievances); *cf. Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council*, 322 F.3d 602, 621 (9th Cir. 2003) (holding that an IIED claim was not preempted because it fell within "local feeling and responsibility" exception to *Garmon* preemption). The Court will GRANT plaintiff leave to amend to demonstrate why the IIED claim is not preempted by *Garmon*.

### C.    Negligent Supervision and Retention (Eighth Cause of Action)

The eighth cause of action alleges that Kaiser "knew or should have known about the conduct of supervisors and failed to prevent foreseeable harm to Plaintiff." Compl. ¶ 25. This cause of action does not specify what conduct was objectionable, but presumably it is the retaliation and harassment by Litvinova's supervisors.

In California, "[a]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 264 (2020) (internal quotation marks omitted). Because this type of claim is a species of negligence, a plaintiff must show: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). This liability "is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996).

To the extent this claim is based on allegations that Litvinova's supervisors retaliated against her and harassed her because of her union advocacy, the claim would appear to be preempted. The Court will GRANT leave to amend so Litvinova can allege specific facts showing why this claim is not preempted.

13

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Kaiser's motion to dismiss Litvinova's complaint as follows and GRANTS leave to amend the first through fourth and seventh and eighth causes of action. The fifth and sixth causes of action are DISMISSED without leave to amend. If Litvinova wishes to allege claims under Section 301 of the LMRA, she may, but must allege facts showing that such claims are timely and that she has exhausted grievance procedures under the CBA.

The amended complaint must be filed no later than **November 7, 2025**. The amended complaint must allege specific facts showing why the claims are not preempted under the LMRA or *Garmon*, as well as the dates that the events in the complaint occurred. In addition, the amended complaint must comply with federal pleading standards as set forth in *Twombly* and *Iqbal*.

**IT IS SO ORDERED**.

Dated: October 21, 2025

SUSAN ILLSTON
United States District Judge